IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
BEAUFORT DIVISION

| | |
|---|---|
| DYNASTY S. JACKSON,<br><br>    Plaintiff,<br><br>v.<br><br>FKG LOGISTICS, LLC., KAZOUBI SAID, AMAZON LOGISTICS, INC., AMAZON LOGISTICS, LLC, AMAZON.COM, INC., AMAZON.COM SERVICES, LLC, AMAZON WEB SERVICE, INC.,<br><br>    Defendants. | C/A No.: 9:24-cv-02083-DCN<br><br><br>**COMPLAINT<br>AND JURY DEMAND** |

COMES NOW, Dynasty S. Jackson, Plaintiff herein, and files her Complaint against Defendants FKG Logistics, LLC ("FKG Logistics"), Kazoubi Said ("Kazoubi"), and Amazon Logistics, Inc., Amazon Logistics, LLC, Amazon.com Inc., Amazon.com Services, LLC, Amazon Web Service, Inc. ("Amazon Defendants") showing the Court as follows:

**JURISDICTION AND VENUE**

1. Plaintiff is a citizen and resident of Beaufort, South Carolina.

2. Defendant FKG Logistics, LLC is a Georgia Limited Liability Corporation with its principal offices located in the state of Georgia. Defendant FKG Logistics, LLC ("FKG Logistics") does not maintain a registered agent for service of process in the State of South Carolina and may be served with process through its registered agent for service of process in the State of Georgia, Dorothy Hudson-Gayle, 304 Serengeti Blvd, Pooler, Georgia 31322. FKG Logistics is an Amazon Delivery Service Partner ("DSP") and part of Amazon's DSP Program.

1

3. This Court has personal jurisdiction over Defendant FKG Logistics under the South Carolina Long-Arm Statute, S.C. Code Ann. §36-2-803, because Defendant FKG Logistics has (1) transacted business within the State of South Carolina, (2) committed tortious acts and/or omissions within the State of South Carolina, (3) cause tortious personal injury to Plaintiff in the State of South Carolina, and (4) used the roadways of and/or within the State of South Carolina, including the time at which its tortious acts and/or omissions caused injury to Plaintiff.

4. Defendant FKG Logistics is subject to the jurisdiction of this Court because its acts and/or omissions are based upon substantial contacts with the State of South Carolina including, but not limited to:

   a. Engaging in a systematic pattern of business operations including the delivery and transport of goods within and through the State of South Carolina using the roadways of and within the State of South Carolina;

   b. Engaging in solicitation activities in the State of South Carolina to promote the sale, consumption, and use of its services;

   c. Conducting and engaging in substantial business and other activities, including interstate and intrastate commerce, in South Carolina by delivering and distributing products via its delivery van operations.

5. Defendant FKG Logistics has such sufficient minimum contacts with the State of South Carolina that are purposefully directed to the State of South Carolina that the filing of this action does not offend traditional notions of fair play and substantial justice.

6. Upon information and belief Defendant Kazoubi Said is a resident of Savannah Georgia and may be served with process at 131 Endicott Dr, Savannah, Georgia 31419.

7. This Court has personal jurisdiction over Defendant Kazoubi Said under the South Carolina Long-Arm Statute, S.C. Code Ann. §36-2-803, because Defendant Kazoubi Said has (1) transacted business within the State of South Carolina, (2) committed tortious acts and/or

omissions within the State of South Carolina, (3) cause tortious personal injury to Plaintiff in the State of South Carolina, and (4) used the roadways of and/or within the State of South Carolina including the time at which his tortious acts and/or omissions caused injury to Plaintiff.

8. Defendant Amazon Logistics, Inc. is a corporation formed under the laws of Delaware with principal offices in Seattle, Washington, and operates throughout the United States, including within this Judicial District. Defendant Amazon Logistics, Inc. does not maintain a registered agent for service of process in the State of South Carolina and may be served with process through its registered agent for service of process in the State of Washington, Corporation Service Company, 300 Deschutes Way SW, Ste. 208 MC-CSCI, Tumwater, Washington 98501.

9. This Court has personal jurisdiction over Defendant Amazon Logistics, Inc. under the South Carolina Long-Arm Statute, S.C. Code Ann. §36-2-803, because Defendant Amazon Logistics, Inc. has (1) transacted business and/or maintain a business presence within the State of South Carolina, (2) committed tortious acts and/or omissions within the State of South Carolina, (3) cause tortious personal injury to Plaintiff in the State of South Carolina, and (4) used the roadways of and/or within the State of South Carolina including the time at which its tortious acts and/or omissions caused injury to Plaintiff.

10. Defendant Amazon Logistics, Inc. is subject to the jurisdiction of this Court because its acts and/or omissions are based upon substantial contacts with the State of South Carolina including, but not limited to:

   a. Engaging in a systematic pattern of business operations including the warehousing, delivery, and transport of goods within and through the State of South Carolina using the roadways of and within the State of South Carolina;

   b. The warehousing of goods and products within the State of South Carolina;

      c. Engaging in solicitation activities in the State of South Carolina to promote the sale, consumption, and use of its services;

      d. Conducting and engaging in substantial business and other activities, including warehousing and interstate and intrastate commerce, in South Carolina by delivering and distributing products via its delivery van operations.

11. Defendant Amazon Logistics, Inc. has such sufficient minimum contacts with the State of South Carolina that are purposefully directed to the State of South Carolina that the filing of this action does not offend traditional notions of fair play and substantial justice.

12. Amazon Logistics, LLC is a corporation formed under the laws of Delaware with principal offices in Seattle, Washington, and operates throughout the United States, including within this Judicial District. Defendant Amazon Logistics, LLC dose not maintain a registered agent for service of process in the State of South Carolina and may be served with process through its registered agent for service of process in the State of Washington, Corporation Service Company, 300 Deschutes Way SW, Ste. 208 MC-CSC1, Tumwater, Washington 98501.

13. This Court has personal jurisdiction over Defendant Amazon Logistics, LLC under the South Carolina Long-Arm Statute, S.C. Code Ann. §36-2-803, because Defendant Amazon Logistics, LLC has (1) transacted business and/or maintain a business presence within the State of South Carolina, (2) committed tortious acts and/or omissions within the State of South Carolina, (3) cause tortious personal injury to Plaintiff in the State of South Carolina, and (4) used the roadways of and/or within the State of South Carolina including the time at which its tortious acts and/or omissions caused injury to Plaintiff.

14. Defendant Amazon Logistics, LLC is subject to the jurisdiction of this Court because its acts and/or omissions are based upon substantial contacts with the State of South Carolina including, but not limited to:

a. Engaging in a systematic pattern of business operations including the warehousing, delivery, and transport of goods within and through the State of South Carolina using the roadways of and within the State of South Carolina;

b. The warehousing of goods and products within the State of South Carolina;

c. Engaging in solicitation activities in the State of South Carolina to promote the sale, consumption, and use of its services;

d. Conducting and engaging in substantial business and other activities, including warehousing and interstate and intrastate commerce, in South Carolina by delivering and distributing products via its delivery van operations.

15. Defendant Amazon Logistics, LLC has such sufficient minimum contacts with the State of South Carolina that are purposefully directed to the State of South Carolina that the filing of this action does not offend traditional notions of fair play and substantial justice.

16. Defendant Amazon.com, Inc. is a corporation formed under the laws of Delaware with principal offices in Seattle, Washington, and operates throughout the United States, including within this Judicial District. Defendant Amazon.com, Inc. maintains a registered agent for service of process in the State of South Carolina and may be served with process through its registered agent for service of process in the State of South Carolina, Corporation Service Company, 508 Meeting Street, West Columbia, SC 29169.

17. This Court has personal jurisdiction over Defendant Amazon.com, Inc. under the South Carolina Long-Arm Statute, S.C. Code Ann. §36-2-803, because Defendant Amazon.com, Inc. has (1) transacted business and/or maintain a business presence within the State of South Carolina, (2) committed tortious acts and/or omissions within the State of South Carolina, (3) cause tortious personal injury to Plaintiff in the State of South Carolina, and (4) used the roadways of and/or within the State of South Carolina including the time at which its tortious acts and/or omissions caused injury to Plaintiff.

18. Defendant Amazon.com, Inc. is subject to the jurisdiction of this Court because its acts and/or omissions are based upon substantial contacts with the State of South Carolina including, but not limited to:

   a. Engaging in a systematic pattern of business operations including the warehousing, delivery, and transport of goods within and through the State of South Carolina using the roadways of and within the State of South Carolina;

   b. The warehousing of goods and products within the State of South Carolina;

   c. Engaging in solicitation activities in the State of South Carolina to promote the sale, consumption, and use of its services; and

   d. Conducting and engaging in substantial business and other activities, including warehousing and interstate and intrastate commerce, in South Carolina by delivering and distributing products via its delivery van operations.

19. Defendant Amazon.com, Inc. has such sufficient minimum contacts with the State of South Carolina that are purposefully directed to the State of South Carolina that the filing of this action does not offend traditional notions of fair play and substantial justice.

20. Amazon.com Services, LLC is a limited liability company formed under the laws of Delaware with principal offices in Seattle, Washington, and operates throughout the United States, including within this Judicial District. Defendant Amazon.com Services, LLC maintains a registered agent for service of process in the State of South Carolina, Corporation Service Company, 508 Meeting Street, West Columbia, SC 29169.

21. This Court has personal jurisdiction over Defendant Amazon.com Services, LLC under the South Carolina Long-Arm Statute, S.C. Code Ann. §36-2-803, because Defendant Amazon.com Services, LLC has (1) transacted business and/or maintain a business presence within the State of South Carolina, (2) committed tortious acts and/or omissions within the State of South Carolina, (3) cause tortious personal injury to Plaintiff in the State of South Carolina, and

(4) used the roadways of and/or within the State of South Carolina including the time at which its tortious acts and/or omissions caused injury to Plaintiff.

22. Defendant Amazon.com Services, LLC is subject to the jurisdiction of this Court because its acts and/or omissions are based upon substantial contacts with the State of South Carolina including, but not limited to:

   a. Engaging in a systematic pattern of business operations including the warehousing, delivery, and transport of goods within and through the State of South Carolina using the roadways of and within the State of South Carolina;

   b. The warehousing of goods and products within the State of South Carolina;

   c. Engaging in solicitation activities in the State of South Carolina to promote the sale, consumption, and use of its services;

   d. Conducting and engaging in substantial business and other activities, including warehousing and interstate and intrastate commerce, in South Carolina by delivering and distributing products via its delivery van operations.

23. Defendant Amazon.com Services, LLC has such sufficient minimum contacts with the State of South Carolina that are purposefully directed to the State of South Carolina that the filing of this action does not offend traditional notions of fair play and substantial justice.

24. Defendant Web Services, Inc. is a corporation formed under the laws of Delaware with principal offices in Seattle, Washington, and operates throughout the United States, including within this Judicial District. Defendant Amazon Web Services, Inc. maintains a registered agent for service of process in the State of Washington, Corporation Service Company, 300 Deschutes Way, Ste. 208 MC-CSCI, Tumwater, Washington 98501.

25. This Court has personal jurisdiction over Defendant Web Services, Inc. under the South Carolina Long-Arm Statute, S.C. Code Ann. §36-2-803, because Defendant Web Services, Inc. has (1) transacted business and/or maintain a business presence within the State of South

7

Carolina, (2) committed tortious acts and/or omissions within the State of South Carolina, (3) cause tortious personal injury to Plaintiff in the State of South Carolina, and (4) used the roadways of and/or within the State of South Carolina including the time at which its tortious acts and/or omissions caused injury to Plaintiff.

26. Defendant Web Services, Inc. is subject to the jurisdiction of this Court because its acts and/or omissions are based upon substantial contacts with the State of South Carolina including, but not limited to:

   a. Engaging in a systematic pattern of business operations including the warehousing, delivery, and transport of goods within and through the State of South Carolina using the roadways of and within the State of South Carolina;

   b. The warehousing of goods and products within the State of South Carolina;

   c. Engaging in solicitation activities in the State of South Carolina to promote the sale, consumption, and use of its services;

   d. Conducting and engaging in substantial business and other activities, including warehousing and interstate and intrastate commerce, in South Carolina by delivering and distributing products via its delivery van operations.

27. Defendant Web Services, Inc. has such sufficient minimum contacts with the State of South Carolina that are purposefully directed to the State of South Carolina that the filing of this action does not offend traditional notions of fair play and substantial justice.

28. This District Court has subject matter jurisdiction to entertain this action pursuant to 28 U.S.C. §1332 based upon complete diversity of citizenship of the parties and because the amount in controversy exceeds $75,000.00.

29. Venue is proper in South Carolina and in this Division because a substantial part of the events and omissions giving rise to this claim occurred in South Carolina and in this Division.

**FACTUAL ALLEGATIONS**

30.  Plaintiff re-alleges and incorporates herein by reference all allegations in paragraphs 1 through 29 as if fully alleged herein.

31.  All listed Amazon entities are liable and are hereinafter referred to as "Defendant Amazon" or "Amazon."

32.  Amazon, self-described as customer-obsessed, created its own delivery and logistics network to ensure customers satisfaction and obtain greater control over its deliveries. This network is now Amazon's multi-billion-dollar logistics division, coined Amazon Logistics, Inc ("ALI"), and it provides a last-mile delivery and shipping service that delivers orders from Amazon.com to Amazon customers.

33.  ALI then created Amazon's DSP Program to provide a network for local deliveries of amazon packages to customers nationwide.

34.  Under the DSP program, amazon contracts with ALI, its subsidiary, for delivery and transportation of the products Amazon sells to its consumers online. ALI, in turn, uses its website and other resources to recruit transportation and logistics companies around the country to become DSPs to deliver Amazon packages and helps the DSPs establish their business with incorporation documents, obtain legal assistance, and procure insurance, and ALI provides other business-developed assistance that Amazon refers to as a "comprehensive toolkit." Amazon then recruits drivers for the DSPs to hire within their service area. As of August 2023, Amazon has more than 3,000 DSPs, employing more than 275,000 drivers.

35. On April 20, 2023, at approximately 2:34 pm, Plaintiff was traveling as a restrained passenger in a 2015 Nissan operated by Maliyah Johnson, traveling westbound on Sams Point Rd in Beaufort County.

36. At the same time, Defendant Kazoubi, who was wearing his Amazon-required uniform, operating an Amazon delivery van owned by Amazon Logistics Inc., bearing an Amazon decal logo with the delivery van's hazard lights actively engaged, in furtherance of his employment as an Amazon delivery driver, suddenly and without warning initiated a left turn into a private road or driveway and, thereby, failed to properly signal, particularly to the vehicle occupied by Plaintiff, his intention to turn into the private road or driveway.

37. In so failing to properly signal his intentions to turn left into the private road or driveway, and after the vehicle occupied by Plaintiff had already entered the adjacent left lane clearly marked and thereby designated for such passing and/or overtaking by the vehicle occupied by Plaintiff, the Amazon delivery van initiated a left turn and thereby struck the front passenger–side quarter panel of the vehicle occupied by Plaintiff.

38. The impact of the collision caused the vehicle occupied by Plaintiff to violently slam into a nearby ditch and not only caused substantial damage to the vehicle occupied by Plaintiff.

39. At the time of the subject collision, Defendant Kazoubi was a DSP driver for FKG Logistics.

40. At all times relevant hereto, Defendant Kazoubi was an employee/agent of FGK Logistics and was operating the Amazon delivery van in the course and scope of his employment/agency.

41. At all times relevant hereto, FKG Logistics and Defendant Kazoubi were agents of Amazon and Defendant Kazoubi was operating the Amazon-owned delivery van in the course and scope of said agency.

### A. Amazon Exercise Near Total Control Over DSPs

42. At all relevant times hereto, the Defendant Amazon comprise the world's largest internet-based seller, with revenues of more than $574 billion in 2023 and more than 1.5 million employees. The online retail giant dominates e-commerce in the United States, accounting for 37.6% of the market in 2023.

43. Amazon created the DSP Program for the purpose of shielding itself from responsibilities to its delivery drivers and the public. However, Amazon, through ALI, exercises near complete control over a DSP's business operations, including its employees.

44. Amazon dictates, manages, and controls nearly every aspect of a DSP, including but not limited to:

   a. Controlling the recruitment, hiring, and training of all DSP drivers, which Amazon refers to as delivery associates;

   b. Requiring DSPs to operate exclusively under the ALI trademark;
   c. Requiring DSPs to follow and operate pursuant to ALI's method of operations;

   d. Requiring DSPs to only make purchases through authorized, or preferred, vendors;

   e. Requiring DSP drivers to wear ALI or Amazon-branded clothing;

   f. Dictating the personal grooming requirements of drivers;

   g. Retaining the ability to terminate and discipline DSP drivers;

   h. Supervising the work of DSP drivers on a daily basis;

   i. Determining the make, model, and style of delivery van to be used for delivery of Amazon packages;

11

j. Requiring DSP operators to sign contracts with specific fleet companies for delivery vehicles;

k. Requiring DSP operators to contract with only specific insurance carriers;

l. Requiring DSP operators to contract with only specific payroll vendors;

m. Maintaining control over and access to the payroll accounts of its DSPs;

n. Setting minimum wages, insurance coverage, and benefits that DSP operators must provide to its own drivers;

o. Requiring that delivery vans contain ALI or Amazon insignia and logos and prohibiting DSP operators from displaying their own names or branding on the vans; and

p. Requiring DSP operators to submit to periodic audits so that Amazon can verify DSP operators have complained with Amazon's requirements with respect to wages, insurance, and benefits for DSP drivers.

**B. Amazon Exercises Near Total Control Over Routes, Packages, Deliveries and DSP Drivers**

45. Aside from dictating the general business aspects of its DSPs, Amazon also exerts control over all aspects of package delivery including, but not limited to, package assignments, loading, routes, and delivery instructions, and Amazon takes an extensive approach to monitoring every move that a DSP driver makes, from before a delivery van is even loaded through the completion of every delivery route.

46. Amazon not only dictates, but also manages, and controls nearly every aspect of the package delivery process by a DSP driver, including, but not limited to:

a. Requiring access to the Amazon Logistics Cortex of its DSPs, which gives Amazon a detailed analysis of all DSP vehicles, driver names, speeds, and locations;

b. Monitoring DSP drivers' performance of pre-trip and post-trip van inspections, DSP operators' performance, and compliance with ALI requirements;

12

c. Requiring DSP drivers to load and unload Amazon packages for delivery from ALI's warehouse and into their delivery vehicles in a specific manner;

d. Requiring DSP drivers to deliver packages to Amazon customers according to a specific schedule created by Amazon, through ALI, that dictates the order of delivery and provides the exact route drivers must follow and dose not allow DSP operators, or drivers, to modify any routes;

e. Dictating how many packages DSP drivers must deliver each day on each route and the length of the routes, and not allowing DSP operators to modify package counts;

f. Requiring DSP drivers to reattempt delivery when DSP drivers do not complete a delivery;

g. Tracking delivery performance, including but not limited to, the number of packages DSP drivers deliver each day, the pace at which drivers deliver packages along the route, the efficiency of the deliveries, the location of DSP drivers at any given time, whether drivers touched their cell phones while driving, whether drivers were wearing their seat belts, whether drivers moved over the speed limit, whether drivers accelerated or stopped too quickly as reported through the Chime, Flex, and/or Mentor Apps;

h. Monitoring the DSP drivers' daily actions using Netradyne cameras installed in each delivery vehicle which are programmed to record detectable events including drowsiness, distracted driving, speeding, failing to maintain a proper lookout, disobeying traffic control devices, and other, and which uploads the footage to a system accessible to Amazon;

i. Evaluating the performance of DSP drivers on a periodic basis in accordance with ALI's specific polices and procedures, which includes, but is not limited to, the assignment of daily and weekly FICO scores, akin to traditional credit scoring, which in turn can not only impact incentive pay but ultimately employment as a DSP driver; and

j. Maintaining complete discretion to terminate or arbitrarily punish a DSP driver, by issuing a "driver defect," in the event of a customer issuing a complaint, regardless of significance or legitimacy.

47. At all times relevant hereto, Amazon dictated, managed, and controlled nearly every aspect of FGK Logistics' business operations and Defendant Kazoubi's daily operations as an Amazon delivery driver, including those set forth in paragraph 44 and 46 above.

## **FOR A FIRST CAUSE OF ACTION**
(Negligence/Recklessness, Negligence *Per Se* Against All Defendants)

48. Plaintiff re-alleges and incorporates herein by reference all allegations in paragraphs 1 through 47 as if fully alleged herein.

49. Defendant Kazoubi owed a duty to Plaintiff to operate the van in a safe and reasonable manner, and in accordance with all state and federal laws and regulations.

50. Defendant Kazoubi breached his duty to use due care in operating the Amazon delivery van and was thereby negligent, negligent *per se*, reckless, willful, and/or wanton in numerous particulars, including but not limited to:

   a. Driving while inattentive and/or distracted;

   b. Failing to use proper signaling;

   c. Failing to yield the right of way;

   d. Failing to keep a proper lookout;

   e. Violating S.C. Code Ann. §56-5-2150(A) by attempting to turn left upon a roadway when such movement could not be made with reasonable safety;

   f. Violating S.C. Code Ann. §56-5-2150(B) by failing to properly signal intention to turn or move right or left upon the roadway;

   g. Violating S.C. Code Ann. §56-5-2330 by initiating a left turn into a private road or driveway without yielding the right of way to any vehicle approaching from the opposite direction which is within the intersection or so close thereto as to constitute an immediate hazard;

   h. Failing to use the degree of care and skill that a reasonable person would have used under the same or similar circumstances;

   i. Acting with conscious disregard for the safety of others, including Plaintiff Dynasty Jackson;

   j. Acting in violation of applicable state and federal statutes and regulations; and

      k. Committing other acts and omissions as discovery may reveal and the evidence at trial may show.

51. Defendant Kazoubi's acts and omissions were the direct and proximate cause of Plaintiff's injuries and damages claimed herein.

52. As a direct and proximate result of Defendant Kazoubi's acts and omissions, Plaintiff suffered severe and life altering injuries which have been and will continue to be accompanied by physical and mental pain and suffering.

53. All Amazon Defendants and Defendant FKG Logistics are vicariously liable for all acts and omissions of Defendant Kazoubi pursuant to the doctrines of agency and *respondeat superior*.

54. Plaintiff is entitled to an award of all actual, consequential, and incidental damages against all Defendants, jointly and severally.

55. Plaintiff is also entitled to an award of punitive damages against all Defendants.

56. Plaintiff is also entitled to an award of prejudgment interest against all Defendants, jointly and severally.

**FOR A SECOND CAUSE OF ACTION**
(Negligent Hiring, Entrustment, Training, Retention, and Supervision Against Amazon Defendants and Defendant FKG Logistics)

57. Plaintiff re-alleges and incorporates herein by reference all allegations in paragraphs 1 through 56 as if fully alleged herein.

58. Amazon and FKG Logistics were negligent, negligent per se, grossly negligent, reckless, willful, and/or wanton in hiring and/or retaining Defendant Kazoubi and entrusting him to drive their motor vehicle, in that Amazon and FKG Logistics knew or should have known that Defendant Kazoubi was too inexperienced, incompetent, unfit, and/or reckless to operate an

Amazon delivery van, which thereby created an appreciable risk of harm to the public, including Plaintiff.

59.     Amazon and FKG Logistics were negligent, negligent per se, grossly negligent, reckless, willful, and/or wanton in failing to properly train and/or supervise Defendant Kazoubi, in that Amazon and FKG Logistics permitted Defendant Kazoubi, who was at all times herein referenced within their employ and control, to operate an Amazon delivery van with knowledge that Defendant Kazoubi posed a danger to the public, including Plaintiff, in operating the vehicle.

60.     The negligence or recklessness of Amazon and FKG Logistics, which was the proximate cause of the subject left-turn collision and Plaintiff's resulting injuries and damages, further include the following actions and/or inactions:

   a. Hiring, retaining, and permitting Defendant Kazoubi to operate the subject Amazon delivery van without properly and adequately qualifying him consistent with industry customs;

   b. Hiring, retaining, and permitting Defendant Kazoubi to operate the subject Amazon delivery van without first conducting a proper and adequate background check to ascertain whether he was competent and fit to operate a package delivery van properly and safely;

   c. Failing to take proper and adequate measures to prevent Defendant Kazoubi from endangering the motoring public, specifically including Plaintiff performing left turns without first properly signaling his intention to do so; performing left turns prior to traveling properly signal for at least 100-ft; performing left turns into a private road or driveway without yielding the right of way to any vehicle approaching or so close thereto so as to constitute an immediate hazard; performing unnecessary left turns when safe routes exist; failing to pay proper attention to his surroundings while driving; driving while distracted, rushing, in a hurry, and/or fatigued;

   d. Failing to provide proper, adequate, ongoing, and/or remedial training to Defendant Kazoubi consistent with industry customs, including safe and defensive driving training in general and specific to paying attention to surroundings, the performance of left turns, and avoiding in-vehicle distractions;

e. Failing to properly and adequately train, monitor, and/or supervise Defendant Kazoubi to ensure he would adhere to proper safe and defensive driving practices custom to the industry and/or required by South Carolina law and/or applicable state and federal standards;

f. Failing to properly and adequately train, monitor, and/or supervise Defendant Kazoubi to ensure he could manage collision-free left turn encounters with the motoring public, specifically including the Plaintiff;

g. Unreasonably setting and assisting Defendant Kazoubi to a delivery route that was too tight or otherwise aggressive to perform without hurrying or rushing to completing said route; and

h. Other particulars as evidence may show at trial.

61. Amazon was further negligent or reckless in the following ways:

a. Generally prioritizing pickup/delivery speed over driver safety and pressuring and/or incentivizing its DSP operators and drivers, including FGK Logistics and Defendant Kazoubi;

b. Unreasonably setting and assisting FGK Logistics and Defendant Kazoubi a delivery route that did not eliminate or minimize left turns in favor of safer available paths to the same destination(s), despite having actual or constructive knowledge, commonly shared in the industry, of the risks and dangers posed by left turns;

c. Mandating a delivery schedule that was unrealistic such that it forced drivers, including Defendant Kazoubi, to rush to the point it was unsafe and, as a practical matter, made it impossible to drive safely;

d. Promoting in-vehicle distractions by mandating its DSP drivers use the Chime, Mentor, and/or Flex Apps that monitor the drivers and packages;

e. Negligently managing the safety data Amazon pulled from the Chime, Mentor, and/or Flex Apps that monitor the drivers and packages;

f. Exerting control over the method and manner of the package deliveries and, in the process, negligently mandating compliance targets that focused on speed and delivery efficiency without giving due consideration to public safety;

g. Relying on unrealistic algorithms that pushed DSP drivers, or delivery associates, to complete unrealistic amounts of package deliveries each day despite having actual constructive knowledge of the dangers of these algorithms;

17

h. Choosing profits over safety, of the public and DSP drivers, by continually pushing DSP drivers to complete an unsafe amount of package deliveries per day;

i. Primarily focusing its energy, times, and resources on mandating fast and profitable package delivery while intentionally seeking to offload all legal responsibility for dangerous situations created by those attempting to meet Amazon's unrealistic package-delivery mandates onto shell companies that Amazon designed, created, and governed to be a proper target for cases like this one; and

j. Failing to consider well-known industry standards for route affinity and other well-known recognized logistics industry safety concepts when designing the daily delivery routes of the DSP drives, again choosing profits over basic safety of its own drivers and the motoring public.

62. Amazon and FGK Logistics' acts and/or omissions in hiring, training, retaining, and supervision Defendant Kazoubi, and in entrusting him with their delivery van, were the direct and proximate cause of the subject collision, as well as Plaintiff's resulting injuries and damages.

63. As a direct and proximate result of the acts and omissions of Amazon and FGK Logistics, Plaintiff has suffered and will continue to suffer the damages described herein.

64. Plaintiff is therefore entitled to an award of all actual, consequential, and incidental damages against Amazon and FGK Logistics, jointly and severally.

65. Plaintiff is also entitled to an award of punitive damages against Amazon and FGK Logistics, jointly and severally.

### INJURIES AND DAMAGES

66. Plaintiff re-alleges and incorporates herein by reference all allegations in paragraphs 1 through 65 as if fully alleged herein.

67. As a direct and proximate result of the negligence and negligence *per se* of the Defendants, laid out above, Plaintiff suffered mental and physical injuries requiring extensive

medical treatment, as well as other economic and noneconomic damages which has and will continue to cause her to incur substantial medical expenses, loss of wages and earning capacity.

68. Based on the foregoing, Plaintiff has incurred medical expenses, and will continue to incur medical expenses for her injuries in the future.

69. As a direct and proximate result of the negligence and negligence *per se* of Defendants, Plaintiff is entitled to recover all special damages in a full amount to be proved at trial, which currently includes, but is not limited to current and future medical bills totaling over $600,500.00.

70. As a direct and proximate result of the negligence and negligence per se of Defendants, Plaintiff is entitled to recover general damages including but not limited to Plaintiff's mental and physical pain and suffering and loss of capacity to enjoy life, past, present, and future.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury as to all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff demands judgment against Defendants for actual and punitive damages, the cost of this action, and such other and further relief as the Court may allow.

This 18th day of April, 2024

/s/Christopher F. Gibbs
Christopher F. Gibbs
SC Federal Court Bar ID: 12128
THE GIBBS LAW FIRM, LLC
1304 Boundary Street
Beaufort, SC 29902
Tel. (843) 379-2330
Fax. (843) 379-2332
cgibbs@cgibbslawfirm.com
*Attorney for Plaintiff*